LAW OFFICES OF William A. PANGMAN &
ASSOCIATES, Plaintiff-Appellant,†

v.

Thomas H. STIGLER, Chief of Police for the City of
Waukesha Police Department in His Capacity as
Records Custodian, Defendant-Respondent.

Court of Appeals

*No. 90-1590. Submitted on briefs March 1, 1991.—Decided
March 27, 1991.*

(Also reported in 468 N.W.2d 784.)

†Petition to review denied.

829

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Timothy J. O'Brien* of *Law Offices of William A. Pangman & Associates, S.C.* of Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Curt R. Meitz,* city attorney of Waukesha.

Before Nettesheim, P.J., Scott and Anderson, JJ.

NETTESHEIM, P.J.   The Law Offices of William A. Pangman appeal from a circuit court decision and order dismissing by summary judgment Attorney Pangman's writ of mandamus action seeking to obtain the complete personnel file of City of Waukesha Police Officer Jeffrey Hennen. The circuit court ruled that the record custodian, Chief of Police Thomas Stigler, properly withheld certain portions of the personnel file.

The issue on appeal is whether Chief Stigler stated sufficient reasons for withholding the disputed material.[1] We conclude that Chief Stigler's reasons were legally sufficient. Therefore, we affirm the circuit court's order dismissing Attorney Pangman's action for mandamus and declaratory relief.[2]

## FACTS

The facts are not disputed. On May 12, 1989, an investigator from Attorney Pangman's office requested copies of:

> [t]he personnel file of Det. Jeffrey Hennen, any and all disciplinary actions taken or contemplated, including but not limited to, citizen complaints, reprimands, suspensions, and investigations; any and all performance reviews, whether for promotional pur-

---

[1] The circuit court also refused to order Chief Stigler to turn over the disputed materials after the court conducted an *in camera* inspection of Officer Hennen's personnel file. Attorney Pangman raises no issue on appeal regarding this aspect of the circuit court's ruling.

[2] Attorney Pangman's original action sounded in mandamus. Within the context of that action, Attorney Pangman brought a "motion for declaratory judgment." The city objected to this procedure, contending that the mandamus petition did not embrace an action for declaratory relief. Alternatively, the city asked the court to construe Attorney Pangman's motion as the equivalent of a motion for summary judgment. Attorney Pangman joined in this latter suggestion. Accordingly, the court addressed the issue in the posture of a summary judgment proceeding.

Although the city did not move for summary judgment, if it appears that the party against whom summary judgment is asserted is entitled to such relief, the court may grant such relief. *See* sec. 802.08(6), Stats.

poses or otherwise.[3]

This request was made pursuant to Wisconsin's Public Records and Property Law, secs. 19.21–19.39, Stats.

Chief Stigler's initial response came via Captain Gordon L. Giese on May 16, 1989. Captain Giese denied Attorney Pangman's request, citing sec. 103.13, Stats., which governs employee access to his or her personnel records.

On May 22, 1989, Attorney Richard Kaiser of Attorney Pangman's office responded to Captain Giese's letter. Attorney Kaiser argued that sec. 103.13, Stats., governed only employee access to the employee's records and did not govern the public's right to such records under Wisconsin's public records law.

On June 8, 1989, Chief Stigler personally responded to Attorney Kaiser, forwarding certain portions of Officer Hennen's personnel file.[4] However, the chief declined to release the remainder of the personnel file, stating:

> However, I am not releasing the remainder of the personnel files at this time, as the release of the documents would be against public policy. Both sections 103.13 and 19.85 of the Wisconsin Statutes evince this public policy by recognizing the legislative sensitivity to personnel matters. I am specifically denying the remaining documents regarding an investigative

---

[3]Attorney Pangman referred to Officer Hennen as a "detective." Chief Stigler used the term of "Officer Hennen." We use the chief's designation of Officer Hennen's rank for purposes of this opinion.

[4]These included personnel data sheet, clothing allowance, appointment of officer, termination of probation, loss of an off day, review of property damage report involving officer, citizen complaint/excessive force, commendation from citizen, and performance evaluations.

file based upon Section 19.85(1)(c) & (f) Wis. Stats. in that any possible benefit to be gained by granting inspection to the documents would be far outweighed by the substantial adverse effect the release would likely have on the officer's reputation, his personal safety, and would likely hinder his ability to properly perform his functions as a police officer.

This lawsuit followed.

Attorney Pangman states in his appellate brief that he made yet another request for Officer Hennen's full personnel file while this action was pending in the circuit court. Unfortunately, the appellate record does not contain this request. However, the appellate record does contain Chief Stigler's February 14, 1990 response to this further request. Moreover, Chief Stigler's appellate brief does not dispute this case's history as presented in Attorney Pangman's brief. We therefore accept as fact that Attorney Pangman made a further demand for the disputed material even though the event is not documented in the appellate record.

In his February 14, 1990 letter denying this further request, Chief Stigler again cited to his June 8 letter quoted above and additionally stated:

Also, there is another public policy reason, in addition to those delineated in my letter of June 8, 1989, for not releasing the remainder of Officer Hennen's personnel file, which includes documents relating to an incident . . ... The need for the City to protect itself from a potential lawsuit resulting from the release of some of the material from Officer Hennen's personnel file, which are highly sensitive, outweighs the public interest in disclosure.

Finally, both Chief Stigler and Officer Hennen supplied affidavits in opposition to Attorney Pangman's summary judgment motion. These affidavits established,

inter alia, that Officer Hennen was assigned as an under-cover officer in the Narcotics and Vice Unit of the City of Waukesha Police Department during the eighteen months preceding the date of the incident at issue. During this time, Officer Hennen's true identity and duties were kept confidential and he was involved with drug transactions with persons who did not know his true identity. Both of these affidavits refer to an event apparently referenced in Attorney Pangman's final request which is not included in the appellate record. Both Chief Stigler and Officer Hennen state in their respective affidavits that disclosure of the records concerning this incident would jeopardize Officer Hennen's personal safety.

## ANALYSIS

In reviewing the trial court's grant of summary judgment, we must apply the standards of sec. 802.08, Stats., in the same manner as the trial court. *Post v. Schwall,* 157 Wis. 2d 652, 656, 460 N.W.2d 794, 795 (Ct. App. 1990). We will not repeat in detail this often stated methodology. *See Preloznik v. City of Madison,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). Suffice it to say that summary judgment is granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kruschke v. City of New Richmond,* 157 Wis. 2d 167, 169, 458 N.W.2d 832, 833 (Ct. App. 1990). Our review of summary judgment rulings is *de novo. Post,* 157 Wis. 2d at 656, 460 N.W.2d at 796.

In addition, where, as here, the issue requires interpretation and application of a statute to a set of undisputed facts, the question is also one of law which we decide without deference to the trial court's ruling. *Osh-*

*kosh Northwestern Co. v. Oshkosh Library Bd.,* 125 Wis. 2d 480, 485, 373 N.W.2d 459, 462 (Ct. App. 1985).

Public records are generally open to public inspection. *Wisconsin State Journal v. University of Wisconsin-Platteville,* 160 Wis. 2d 31, 36, 465 N.W.2d 266, 268 (Ct. App. 1990). Section 19.31, Stats., recites a legislative presumption in favor of public access to public records:

> [I]t is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of the government and the official acts of those officers and employes who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employes whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

Section 19.35(1), Stats., offers guidance as to when an exceptional case exists allowing for denial of access to a public record:

> (a) . . . The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are *indicative* of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made. [Emphasis added.]

835

We thus look to whether an open meetings exemption applies to the kind of public records sought in this case. Section 19.85(1), Stats., allows a public meeting to be closed if the governmental body is:

(c)  Considering employment, promotion, compensation or performance evaluation data of any public employe over which the governmental body has jurisdiction or exercises responsibility.

. . ..

(f)  Considering financial, medical, social or personal histories or disciplinary data of specific persons, preliminary consideration of specific personnel problems or the investigation of charges against specific persons except where par. (b) applies which, if discussed in public, would be likely to have a substantial adverse effect upon the reputation of any person referred to in such histories or data, or involved in such problems or investigations.

Since the above exemptions to the open meetings law pertain to personnel-related matters, Chief Stigler properly alluded to these exemptions in his letters of June 8, 1989 and February 14, 1990 refusing Attorney Pangman's requests.

Attorney Pangman, however, properly observes that the statutory exemptions to public access are only *indicative—not controlling*—on the question of whether access can be denied. We so held in *Oshkosh Northwestern:*

We reject the board's position that a meeting properly closed under one of the exemptions listed in sec. 19.85(1), Stats., *in and of itself* provides sufficient reason to deny access to records generated during a closed meeting.

836

125 Wis. 2d at 485, 373 N.W.2d at 462 (emphasis added). Rather, when sec. 19.85, Stats., exemptions are invoked, the custodian must make a specific determination based on public policy reasons that there is a need to restrict public access. *Id.*

Attorney Pangman complains that Chief Stigler's reasons for denying access ran afoul of the *Oshkosh Northwestern* rule. We disagree. In *Oshkosh Northwestern,* the custodian denied a newspaper's request for any motions and roll call votes which occurred during a closed session of a library board meeting. The custodian refused access, relying exclusively on an exemption set out in the open meeting law. *Id.* at 484, 373 N.W.2d at 462. As noted above, we held this reason legally insufficient to support denial of public access:

> The city attorney failed to state with the requisite specificity and sufficiency the public policies which would be implicated under the particular facts of this case if access to the motions and roll call vote was granted.

*Id.,* 125 Wis. 2d at 486, 373 N.W.2d at 463.

Chief Stigler's reasons for denying access do not suffer from the same deficiencies as were present in *Oshkosh Northwestern.* The chief did not mechanistically or, as Attorney Pangman argues, on a "blanket" basis, invoke the applicable open records exemptions. Rather, the chief engaged in a balancing process, weighing the acknowledged public interest to be served by disclosure against the potential for harm to be visited upon both Officer Hennen and the public resulting from disclosure. As a result of this process, Chief Stigler divulged certain information and withheld other information. Assuming

proper reasons for refusing access are given, the law asks no more of a public records custodian.

Attorney Pangman argues that *State ex rel. Bilder v. Township of Delavan,* 112 Wis. 2d 539, 334 N.W.2d 252 (1983), mandates full disclosure of Detective Hennen's personnel file. We disagree. In *Bilder,* the supreme court upheld a circuit court order permitting a newspaper to inspect certain pleadings and documents filed in a circuit court action involving the police chief of the town of Delavan. The supreme court stated:

> By accepting his public position Bilder has, to a large extent, relinquished his right to keep confidential activities directly relating to his employment as a public law enforcement official.

*Id.,* 112 Wis. 2d at 557, 334 N.W.2d at 262.

While Attorney Pangman correctly quotes *Bilder,* he overlooks that *Bilder* was decided under sec. 59.14, Stats., governing records maintained by a clerk of courts rather than under the public records statute. *Id.* at 553, 334 N.W.2d at 260. *Bilder* recognized only two exceptions to disclosure under sec. 59.14: (1) where there is a statute authorizing the sealing of otherwise public records; and (2) disclosure which infringes on a constitutional right. *Id.* at 554–55, 334 N.W.2d at 260. As such, the exceptions to disclosure under sec. 59.14 are more limited than under the public records law. This case does not concern pleadings or documents filed in a circuit court action. *Bilder* does not control.

Rather, this case is more akin to the court of appeals recent decision in *Wisconsin State Journal.* There, the chancellor of the University of Wisconsin-Platteville denied a request for certain records pertaining to an investigation of nepotism within the university. The chancellor denied the request, invoking the exemp-

tion provisions of sec. 19.85(1)(f), Stats., and the reputational interests of the target of the investigation. The court of appeals, applying the *Oshkosh Northwestern* test, held that these reasons were sufficient. *Wisconsin State Journal,* 160 Wis. 2d at 39, 465 N.W.2d at 269. The court noted that:

> To demand that the custodian provide additional justification for his denial would also require that he divulge the *reasons* that the documents would have a substantial adverse effect on Al-Yasiri's reputation. This would require detailing the contents of the documents sought to be protected from disclosure. This requirement would eliminate the protection afforded the documents by virtue of being exempted from the public records law. [Emphasis in original.]

*Id.* (emphasis in original).

The same logic applies here. If we were to hold that Chief Stigler's reasons are insufficient, we would eliminate the very protection which the law accords to the material. The legislature has chosen to allow for nondisclosure of certain public records in limited circumstances if the custodian gives adequate reasons for withholding the information. This case qualifies as one of those limited circumstances under the statutory exemptions and the reasons given by Chief Stigler are sufficient under the statute.[5]

---

[5]Because we conclude that Chief Stigler properly and sufficiently invoked the statutory exemptions set out in sec. 19.85, Stats., we need not address whether the chief's additional invocation of sec. 103.13, Stats., governing employee access to his or her own personnel records was appropriate. This issue is presently pending on certification to the Wisconsin Supreme Court. *See Law Offices of William A. Pangman & Assocs. v. Zellmer,* nos. 90-1609 and 90-1630.

This case, however, is not governed by statutory considerations alone, for Wisconsin's public records law also represents an embodiment of the common law. *Bilder,* 112 Wis. 2d at 552, 334 N.W.2d at 259. While the common law also recognizes the public's right to inspect public documents and records, this right is not absolute. *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 681, 137 N.W.2d 470, 474 (1966). There may be situations where the harm done to the public interest may outweigh the right of a member of the public to have access to particular public records or documents; the one must be balanced against the other in determining whether to permit inspection. *Id.* This exercise is performed on a case-by-case basis. *Id.* at 682, 137 N.W.2d at 475.

Here again, Chief Stigler's concerns for Officer Hennen's reputational interests, ability to continue to effectively perform as a police officer, and the potential for liability on the part of the city if disclosure were permitted were relevant considerations. Of paramount importance, however, in our judgment, was the chief's expressed concern for Officer Hennen's safety.

The withheld materials concern Officer Hennen's eighteen-month role as an undercover officer in the Narcotics and Vice Unit of the Waukesha Police Department. During that time, he was involved in drug transactions with persons who did not know his true identity. Disclosure of the withheld materials would "blow" Officer Hennen's cover and place him at personal risk. Chief Stigler recognized this risk and recited it among his reasons for denying Attorney Pangman access to this information.

Although Chief Stigler stated additional reasons for denying access, we consider his legitimate consideration

for Officer Hennen's safety to be not only proper and compelling, but also controlling on this question.[6] The public's "right to know" does not extend to jeopardizing the lives and safety of its police officers.

*By the Court.*—Order affirmed.

---

[6]Therefore, we also conclude that this case is not governed by the pending matter on certification to the Wisconsin Supreme Court. *See* footnote 5.